## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## ELKINS

**KARL J. KOLENICH** and
**ERIKA KOLENICH,**

      Plaintiffs,

v.

**CIVIL ACTION NO. 2:19-CV-38
(BAILEY)**

**HIGHMARK WEST VIRGINIA, INC.,**
d/b/a Highmark Blue Cross Blue Shield
West Virginia,

      Defendant.

## ORDER GRANTING MOTION TO DISMISS NON-ERISA CLAIMS AND DAMAGES

Currently pending before this Court is defendant's Motion to Dismiss Non-ERISA Claims and Damages [Doc. 8], filed November 1, 2019. Having been fully briefed, this matter is now ripe for decision. For the reasons set forth below, the Motion will be granted.

## BACKGROUND

Plaintiff, Karl Kolenich, is enrolled in a Health Benefit Plan ("the Plan") provided by his employer, Klie Law Offices, PLLC [Doc. 7 at 2]. Defendant is the administrator of the Plan [Id.]. On September 24, 2018, Mr. Kolenich was transported via helicopter from St. Joseph's Hospital in Buckhannon, West Virginia, to J.W. Ruby Memorial Hospital in Morgantown, West Virginia, after being diagnosed with an aortic dissection [Id.]. On or about October 28, 2018, approximately three weeks post open-heart surgery, Mr. Kolenich reported to St. Joseph's Hospital with complaints of lightheadedness, shortness of breath, and heart palpitations [Id. at 7]. The next morning, Mr. Kolenich was transported to the

1

Cleveland Clinic in Cleveland, Ohio, via fixed wing aircraft [Id. at 8]. Mr. Kolenich submitted bills for these air transportation services to defendant under the Plan, but alleges that his claims were denied [Id. at 2–14]. Defendant states that "[n]either air ambulance service that Mr. Kolenich used was in [defendant's] provider network. [Defendant] paid the Plan Allowance for Mr. Kolenich's air transportation bills, but those payments were not the entire amounts billed by the air ambulance services." [Doc. 9 at 2].

On July 10, 2019, Mr. Kolenich brought this action against defendant under the private action provisions included in the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), claiming that defendant "fail[ed] to provide coverage and benefits," "failed to comply with each and every request for information," and seeking an award of attorneys' fees and costs ("the ERISA claims") [Docs. 1 at 14–16; 7 at 14–17]. On October 1, 2019, Mr. Kolenich amended his Complaint to add non-ERISA claims [Doc. 7]. Specifically, causes of action titled "Common Law Claim Misconduct and Violations of the Unfair Settlement Practices Act" and "Breach of Implied Covenant of Good Faith and Fair Dealing" were added [Id. at 17–19]. Mr. Kolenich now seeks a host of tort damages, including damages for "sustained aggravation and inconvenience, emotional distress, anger, anguish, chagrin, depression, disappointment, embarrassment, fear, frights, grief, horror, loss of use of insurance benefits, annoyance, inconvenience and/or humiliation," and also punitive damages [Id. at 20]. Furthermore, although not set out as its own claim, Mr. Kolenich appears to add a claim for his wife's loss of consortium [Id.]. Accordingly, Mr. Kolenich's wife, Erika Kolenich, is now also a plaintiff in this action.

On November 1, 2019, defendant brought the instant Motion, arguing that the "newly added State Law Claims are not viable and should be dismissed, because they are

completely pre-empted by the terms of ERISA itself" [Doc. 9 at 3]. Specifically, defendant argues the state law claims asserted by plaintiffs are subject to the 29 U.S.C. § 1144(a) pre-emption clause because they "relate to" the Plan. See [Id. at 4–7]. In response, plaintiffs argue that "[d]efendant improperly asserts a blanketed immunity under . . . [ERISA] for Plaintiffs' newly added claims in the Amended Complaint although the same are not related to Defendant's duties under the administration of the ERISA plan at issue in this case" [Doc. 14 at 1]. Further, plaintiffs argue that "the Defendant's motion is not ripe until the end of discovery, at the summary judgment phase. Therefore, the Defendant's motion is also premature and should be denied." [Id.]. In reply, defendant argues that "Plaintiffs' response argument amounts to a *post hoc* attempt to distance themselves from their own allegations in their First Amended Complaint. The allegations of the First Amended Complaint leave no doubt that each and every act by [defendant] about which Plaintiffs complain relates to [defendant's] administration of the Plan." [Doc. 16 at 2].

## **LEGAL STANDARD**

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007); see also **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008) (applying the **Twombly** standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser-Busch, Inc. v. Schmoke,* 63 F.3d 1305, 1312 (4th Cir. 1995), *vacated on other grounds,* 517 U.S. 1206 (1996). In *Twombly*, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 1964–65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 1974.

## APPLICABLE LAW

ERISA "comprehensively regulates, among other things, employee welfare benefit plans that, 'through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44 (1987). ERISA contains civil enforcement provisions under which "a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits." *Id.* at 53. "A participant or beneficiary may also bring a cause of action for breach of fiduciary duty, and under this cause of action may seek removal of the fiduciary." *Id.* ERISA's "civil enforcement remedies were intended to be exclusive," *id.* at 54, and thus ERISA contains "express pre-emption provisions" that are "deliberately expansive, and

4

designed to 'establish pension [and welfare] plan regulation as exclusively a federal concern.'" *Id.* at 45–46 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

The Supreme Court of the United States has explained these pre-emption provisions as follows:

> Congress capped off the massive undertaking of ERISA with three provisions relating to the pre-emptive effect of the federal legislation:
>
>> "Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." § 514(a), as set forth in 29 U.S.C. § 1144(a) (pre-emption clause).
>
>> "Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." § 514(b)(2)(A), as set forth in 29 U.S.C. § 1144(b)(2)(A) (saving clause).
>
>> "Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B) (deemer clause).
>
> To summarize the pure mechanics of the provisions quoted above: If a state law "relate[s] to . . . employee benefit plan[s]," it is pre-empted. § 514(a). The saving clause excepts from the pre-emption clause laws that "regulat[e] insurance." § 514(b)(2)(A). The deemer clause makes clear that a state law that "purport[s] to regulate insurance" cannot deem an employee benefit plan to be an insurance company. § 514(b)(2)(B).

*Pilot Life Ins. Co.*, 481 U.S. at 44–45.

With regard to the pre-emption clause, "[t]he term 'State law' encompasses not only

5

statutes but also common law causes of action." ***Gresham v. Lumbermen's Mut. Cas. Co.***, 404 F.3d 253, 258 (4th Cir. 2005). Furthermore, the phrase "relate to" is "given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" ***Pilot Life Ins. Co.***, 481 U.S. at 47 (quoting ***Metropolitan Life Ins. Co. v. Massachusetts***, 471 U.S. 724, 739 (1985)). Thus,

> [w]hile the scope of preemption is thus quite broad, it is not unlimited. *See **Ingersoll–Rand** [**Co. v. McClendon**]*, 498 U.S. [133, 139 (1990)]. "What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." ***Aetna Life Ins. Co. v. Borges***, 869 F.2d 142, 146–47 (2d Cir. 1989). Generally, when a state law claim may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, there will be preemption. *See **Aetna Health Inc. v. Davila***, 542 U.S. 200, 124 S.Ct. 2488, 2495, 159 L.Ed.2d 312 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."); ***Monarch Cement Co. v. Lone Star Indus.***, 982 F.2d 1448, 1452 (10th Cir. 1992).

***Gresham***, 404 F.3d at 258.

## DISCUSSION

Defendant argues that each of plaintiffs' state law claims "relate to" Mr. Kolenich's Plan and are not based on laws "regulat[ing] insurance." Thus, defendant argues each must be dismissed as pre-empted by ERISA. Plaintiffs, on the other hand, argue that the "Non-ERISA claims in the amended complaint do not arise in the course of administrative duties related to the plan, and are not related to plaintiff Karl Kolenich's claim for benefits. Therefore, the state law claims are not preempted by ERISA." [Doc. 14 at 2].

Upon consideration, this Court agrees with defendant. Each of plaintiffs' state law

claims "relate to" the Plan and are not based on laws "regulat[ing] insurance." Thus, these state law claims are subject to ERISA's pre-emption clause and cannot avoid pre-emption by way of the saving clause. Accordingly, each of plaintiffs' state law claims must be dismissed as pre-empted by ERISA.

The first of plaintiffs' state law claims is their Fourth Cause of Action titled "Common Law Misconduct and Violations of the Unfair Settlement Practices Act," which states the following:

### FOURTH CAUSE OF ACTION

#### COMMON LAW CLAIM MISCONDUCT AND VIOLATIONS OF THE UNFAIR SETTLEMENT PRACTICES ACT

50. Plaintiffs incorporates those allegations of the General Allegations, Jurisdiction, Parties, and Factual Background sections along with the First, Second and Third Causes of Action as though set forth in full in this cause of action.

51. The actions of Defendant Highmark including but not limited to: **delaying payment of a clearly covered claim, paying claims at less than full value** with no justifiable reason or basis, **unlawfully denying coverage**, failure to act reasonably and timely on communications, and misrepresenting pertinent **terms of the policy** of the Plaintiffs, **wrongful withholding of payment** for Plaintiff Kolenich's covered damages and losses and/or **valid claim under his Highmark insurance policy**.

52. Plaintiffs and their medical providers advised Defendant Highmark that **Plaintiff Kolenich's claim was covered under his Highmark insurance policy** under West Virginia law, and that the **policy** contractually obligated Defendant Highmark to properly **pay the claims**.

53. Defendant Highmark had possession of documents, materials and/or evidence indicating that **Plaintiff's claim** was a covered loss under the Highmark insurance policy at the time said denials were made.

54. Defendant Highmark's, acts and omissions of, included but not limited

7

to[:] failing to adopt and implement reasonable standards for the prompt investigation and payment of **claims arising under insurance policies**; unreasonably refusing to acknowledge that **plaintiff's claim was a covered loss**; and failing to negotiate in good faith.

55. Defendant Highmark's acts and omissions as described herein, upon information and belief, constitute breaches **of the applicable insurance contract** lawfully entered into by the Parties.

56. Defendant Highmark, its agents, servants and employees, violated the West Virginia Unfair Claims Settlement Practices Act, West Virginia Code § 33-11-4(9), the Unfair Trade Practices Act, as well as the West Virginia Insurance Regulations promulgated there under, including, but not limited to, the following:

    a. Failed to adopt and implement reasonable standards for the prompt acknowledgment and investigation of **claims arising under insurance policies**;

    b. Failed in good faith to effectuate prompt, fair and equitable **settlement of claims**;

    c. Misrepresenting pertinent facts or insurance policy provisions relating to **coverage's at issue**;

    d. Failing to acknowledge and act reasonably promptly upon communications with respect to **claims arising under insurance policies**;

    e. **Refusing to pay claims** without conducting a reasonable investigation based upon all available information;

    f. Failing to promptly provide a reasonable explanation of the basis in the **insurance policy** in relation to the facts or applicable law for **denial of a claim** or for the offer of a compromise settlement and;

    g. Other acts and omissions as disclosed by discovery.

57. Defendant Highmark, by and through its agents, servants, and employees has committed violations fo the West Virginia Unfair Claims Settlement Practices Act with such frequency as to indicate a general business practice.

58. As a direct and proximate result of the acts alleged in this count, Plaintiffs were damaged as is hereinafter set forth.

[Doc. 7 at 17–19] (emphasis added).

Plaintiffs' second state law claim is their Fifth Cause of Action titled "Breach of Implied Covenant of Good Faith and Fair Dealing," which states the following:

### FIFTH CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

59. Plaintiffs incorporates those allegations of the General Allegations, Jurisdiction, Parties, and Factual Background sections along with the First, Second, Third and Fourth Causes of Action as though set forth in full in this cause of action.

60. Defendant Highmark breached its implied covenant of good faith and fair dealing with Plaintiff including, but not limited to:

  A: Failing to accord the interest and rights of Plaintiff Kolenich at least as great a respect as its own;

  B: Failing to conduct a proper investigation and evaluation **of the relevant claims** based upon the objective and cogent evidence; and

  C: Failing to timely and fully pay **Plaintiff's claim** when it became reasonably clear the claim was covered.

61. As a direct and proximate result of the acts of Defendant Highmark as alleged in this Count of the Complaint, Plaintiffs were damaged and injured as is hereinafter set forth.

[Id. at 19] (emphasis added).

This Court bolded several words and phrases in these Causes of Action to highlight that, despite plaintiffs' argument to the contrary, in each of these allegations plaintiffs claim that defendant did something wrong in the administration of the Plan, even explicitly

9

claiming that defendant breached its duties pursuant to the Plan. Accordingly, each of these allegations "relate to" an ERISA plan, and are subject to ERISA's pre-emption clause.

Plaintiffs' arguments to the contrary are simply unavailing. Plaintiffs rely on ***Darcangelo v. Verizon Communications, Inc.***, 292 F.3d 181 (4th Cir. 2002), to argue that "[h]ere, like[] the plaintiff in ***Darcangelo***, Plaintiffs have asserted claims that are not related to the fiduciary obligations in the administration of the Plan, and have absolutely nothing to do with the payment of the benefits owed to Plaintiff Karl Kolenich under the Plan. Plaintiffs' claims, similar to some of those upheld in ***Darcangelo***, allege that the Defendant committed fraud, violated unfair settlement practices, and violated good faith and fair dealing practices, all of which fall outside the practices of the Defendant to administer the Plan." [Doc. 14 at 4]. This Court disagrees.

***Darcangelo*** stands for the proposition that "the simple fact that a defendant is an ERISA plan administrator does not automatically insulate it from state law liability for alleged wrongdoing against a plan participant or beneficiary." *Id.* at 191. In determining that some of plaintiff's claims were not pre-empted by ERISA, the ***Darcangelo*** court explained as follows:

> As explained above, however, Darcangelo's complaint alleges that Verizon and CORE did *not* obtain this information in pursuit of a legitimate or appropriate end. This amounts to an allegation that Verizon and CORE undertook conduct that was *entirely unrelated to and outside of the scope of their duties under the plan or in carrying out the terms of the plan*. Darcangelo does not allege that CORE improperly performed some traditional fiduciary function, such as "managing assets" or "distributing property" under the plan. Nor does Darcangelo allege that CORE negligently "discharge[d its] duties," § 404(a)(1), or negligently carried out the terms of the plan. Rather, Darcangelo alleges conduct by CORE that is completely

10

> unauthorized—conduct that was not undertaken in the course of carrying out its plan responsibilities. The complaint, in other words, does not simply allege "faulty plan administration," rather, *it alleges improper conduct so unrelated to the plan that it cannot be termed "plan administration" of any sort.* If, as Darcangelo alleges, CORE obtained her private medical information solely at the behest of Verizon to assist Verizon in its attempt to find a reason to discharge her, *CORE was not acting in the course of making a benefits determination or performing any other plan function.* The clear implication of these allegations is that *CORE was not performing a fiduciary function, but was simply behaving as a rogue administrator, acting entirely outside the scope of its duties under the plan.*

*Id.* at 193 (internal citations omitted) (emphasis added).

This is simply not the case here. Though plaintiffs argue such in their Response, plaintiffs' Amended Complaint does not allege anywhere that defendant "undertook conduct that was entirely unrelated to and outside of the scope of their duties under the plan or in carrying out the terms of the plan." *Id.* Instead, as highlighted above, plaintiffs' Amended Complaint continually alleges defendant wrongfully administered the Plan. This Court tends to agree with defendant that "[p]laintiffs' response argument amounts to a *post hoc* attempt to distance themselves from their own allegations in their First Amended Complaint" [Doc. 16 at 2]. Though plaintiffs' Response mentions allegations of fraud, the word "fraud" does not appear once in plaintiffs' Amended Complaint. Nor does the allegation in plaintiffs' Response that defendant "committed fraud by intentionally not having an in-network provider of emergency air transportation so that Defendant can, across the board for all policy holders, avoid coverage of claims," [Doc. 14 at 4–5], appear anywhere in plaintiffs' Amended Complaint. Simply, plaintiffs' state law claims do not allege "improper conduct so unrelated to the plan that it cannot be termed 'plan administration' of any sort." *Darcangelo*, 292 F.3d at 193. To the contrary, plaintiffs' state

law claims relate *entirely* to defendant's plan administration.

Furthermore, this Court notes that in the very first paragraph of the Amended Complaint, plaintiffs articulate that their claims "relate to" an ERISA plan. This paragraph states as follows:

> 1. Plaintiffs alleges [sic] that Plaintiffs' claims "relate to" an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. section 1001 et seq. and that the subject Medical Expense Plan instituted by Klie Law Offices, PLLC constitutes a "plan under ERISA." Therefore, Plaintiffs allege that this Court's jurisdiction is invoked pursuant to 28 U.S.C. Section 1337 and 29 U.S.C. Section 1132(e).

[Doc. 7 at 1]. This paragraph does not say "*some* of plaintiffs' claims 'relate to' an ERISA plan," it says "[p]laintiffs' *claims* 'relate to'" an ERISA plan. This is just further support for what is evident from the face of plaintiffs' Amended Complaint—plaintiffs' state law claims all "relate to" Mr. Kolenich's ERISA Plan and therefore fall within ERISA's pre-emption clause.

Having found these state law claims subject to the ERISA pre-emption clause, this Court must next determine if any of them are exempt from pre-emption by the saving clause because they "regulate insurance." § 514(b)(2)(A), as set forth in 29 U.S.C. § 1144(b)(2)(A) (saving clause). Upon consideration, this Court finds that none of these state claims regulate insurance, and thus the saving clause does not apply.

It is clear that plaintiffs' common law claims—"common law misconduct" and "breach of implied covenant of good faith and fair dealing"—are based on laws that do not "regulate insurance." "[S]uch actions are not directed at the insurance industry alone and do not relate to the spreading of risk." ***Custer v. Pan Am. Life Ins. Co.***, 12 F.3d 410, 420 (4th Cir. 1993). Further, while certainly a closer question on its face, all pertinent courts to have

considered the issue have found that claims under the West Virginia Unfair Trade Practices Act, W.Va. Code §§ 33-11-1 through 33-11-10, including claims for unfair claim settlement practices under W.Va. Code § 33-11-4(9) such as those brought by plaintiffs here, are *not* subject to ERISA's saving clause as "regulat[ing] insurance." *See Ball v. Life Planning Servs., Inc.*, 187 W.Va. 682, 686, 421 S.E. 2d 223, 227 (1992) ("[W]ith respect to [plaintiff's] claim under W.Va. Code § 33-11-4(9)[, t]his claim relates to unfair claim settlement practices and is clearly the same type of claim that the United States Supreme Court found to be pre-empted by § 514(a) of ERISA in *Pilot Life Insurance Co. v. Dedeaux*."); *Custer*, 12 F.3d at 420 ("[W]e hold that [plaintiff's] claims under West Virginia law[, brought pursuant to W.Va. Code § 33-11-4(9),] relating to improper claims processing or administration are not saved from preemption by the savings clause."); *Tri-State Mach., Inc. v. Nationwide Life Ins. Co.*, 33 F.3d 309 (4th Cir. 1994) (holding that claims for violation of the insurance chapter of the West Virginia Unfair Trade Practices Act are not saved from pre-emption); *Coffman v. Metro. Life Ins. Co.*, 138 F.Supp.2d 764 (S.D. W.Va. 2001) (Haden, C.J.) (dismissing plaintiff's claims brought pursuant to the West Virginia Unfair Trade Practices Act as pre-empted based on the Fourth Circuit's rulings in *Custer* and *Nationwide*); *Copley v. Liberty Life Assurance Co. of Boston*, 2006 WL 8438618, at *3 (S.D. W.Va. Apr. 24, 2006) (Copenhaver, J.) ("Claims seeking relief under the West Virginia Unfair Trade Practices Act ('WVUTPA') are also preempted when they 'relate to' the processing of benefits pursuant to an ERISA plan.") (citing *Nationwide*, 33 F.3d at 315; *Coffman*, 138 F.Supp.2d at 766–67). Accordingly, this Court finds that the saving clause does not apply to plaintiffs' state law claims. Thus, plaintiffs' state law

claims—their Fourth and Fifth Causes of Action—are pre-empted and will be dismissed.

Dismissing plaintiffs' Fourth and Fifth Causes of Action also necessitates dismissal of plaintiff Erika Kolenich's loss of consortium claim. As Erika Kolenich was not a party in the original Complaint and no loss of consortium claim was made in the original Complaint, this Court assumes that Mrs. Kolenich's loss of consortium claim is based on the state law Causes of Action raised in plaintiffs' Amended Complaint. "In West Virginia, loss of consortium claims are 'derivative of the underlying tort claim with which they are brought' and recovery depends upon the success of the underlying tort claim." *Councell v. Homer Laughlin China Co.*, 2012 WL 907086, at *18 (N.D. W.Va. Mar. 15, 2012) (Stamp, J.) (citing *Dupont v. United States*, 980 F.Supp. 192, 195–96 (S.D. W.Va. 1997) (Goodwin, J.)). Thus, having dismissed the underlying tort claims, Mrs. Kolenich's loss of consortium claim must also be dismissed.[1]

Additionally, as only ERISA claims remain, this Court will strike plaintiffs' demands for compensatory and punitive damages. It is "clear that compensatory and punitive damages are not available under ERISA." *Copley*, 2006 WL 8438618, at *4 (citing *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 384 (4th Cir. 2001) (ERISA civil enforcement provision does not encompass compensatory damages)); *see also Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1009 (9th Cir. 1998) ("Extracontractual,

---

[1] This Court notes Mrs. Kolenich's loss of consortium claim would also be dismissed if it derives from Mr. Kolenich's ERISA claims. "If the loss of consortium claim is derived from the ERISA claim, then the loss of consortium claim is best characterized as a state law claim preempted by ERISA." *Kidneigh v. UNUM Life Ins. Co. of Am.*, 345 F.3d 1182, 1189 (10th Cir. 2003) (citing *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1009–10 (9th Cir. 1998); *Pacificare of Oklahoma, Inc. v. Burrage*, 59 F.3d 151, 155 (10th Cir. 1995) ("A loss of consortium claim against an [insurer] alleging negligent or fraudulent administration of the plan is preempted by ERISA.")).

compensatory, and punitive damages are not available under ERISA.").

Finally, this Court will address plaintiffs' alternative arguments presented in their Response to defendant's Motion. First, plaintiffs argue that they "should be allowed to conduct discovery and then have the Court rule whether or not, based on the factual record that develops, these claims were undertaken in the performance of the plan's administrator's fiduciary duties" [Doc. 14 at 5]. Plaintiffs again rely on *Darcangelo*, which stated that plaintiff's claims "relating to confidentiality of medical records, unfair trade practices, privacy, and negligence, cannot be disposed of on preemption grounds at the motion to dismiss stage." *Darcangelo*, 292 F.3d at 186. The problem with this argument is that in the very next sentence the court explained that "[t]his is because the complaint, in setting forth these four claims, charges [defendant] with conduct that is *entirely unrelated* to its duties under the ERISA plan." *Id.* (emphasis added). As explained in detail above, that is not the case here. Plaintiffs did not allege any conduct by defendant that was entirely unrelated to its duties under the Plan, and thus there is no need to let the factual record develop on claims that are not presented.

Next, plaintiffs argue that "[a]lternatively, should the Court be inclined to grant Defendant's motion, the same should not be granted with prejudice, and the Plaintiffs should be granted leave to amend the pleading" [Doc. 14 at 5]. This request will be granted in part. This Court cannot simply grant plaintiffs leave to amend, as plaintiffs have not made a formal motion to amend and this Court has not been presented with a proposed second amended complaint as required by Local Rule of Civil Procedure 15.01. Without any argument regarding amendment or a proposed second amended complaint

15

to consider, this Court cannot determine whether some reason exists to deny amendment, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, this Court will grant plaintiffs' request for a dismissal without prejudice, and will allow plaintiffs the opportunity to move for amendment, should they so choose. Any such motion to amend shall be filed by the **February 17, 2020**, Joinder & Amendments Deadline set forth in this Court's Scheduling Order [Doc. 19]. Should plaintiff not file a motion to amend by that time, or should this Court deny plaintiffs' motion to amend, then the dismissal of plaintiffs' state law claims shall be with prejudice.

## CONCLUSION

Based upon the foregoing, this Court hereby **GRANTS** defendant's Motion to Dismiss Non-ERISA Claims and Damages **[Doc. 8]**. Accordingly, plaintiffs' Fourth Cause of Action, Fifth Cause of Action, loss of consortium claim, request for compensatory damages, and request for punitive damages are hereby **DISMISSED WITHOUT PREJUDICE**. Any motion for leave to file a second amended complaint shall be filed **no later than February 17, 2020**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: January 21, 2020.

/s/ John Preston Bailey
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE